**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ESTER RHODES,<br><br>           Plaintiff,<br><br>  v.<br><br>NORTHUMBERLAND COUNTY,<br><br>           Defendant. | CIVIL ACTION NO. 4:23-CV-01807<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant Northumberland County ("the County"). (Doc. 11). Plaintiff Ester Rhodes ("Rhodes") initiated this action by filing a complaint against the County on October 31, 2023. (Doc. 1). On January 3, 2024, Rhodes filed the operative amended complaint. (Doc. 9). Therein she alleges the County violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 9). For the following reasons, the County's motion to dismiss (Doc. 11) will be **DENIED**.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

The following factual background is taken from Rhodes's amended complaint and must be considered true for the purpose of the instant motion. (Doc. 9). Rhodes is a Hispanic female. (Doc. 9, ¶ 13). Between 2003 and 2013, Rhodes worked for the County as a probation officer. (Doc. 9, ¶ 14). During her employment, it was publicly known that Rhodes had expressed concerns about discrimination at the workplace. (Doc. 9, ¶ 17). In 2013, Rhodes was terminated. (Doc. 9, ¶ 17). She subsequently brought a wrongful termination lawsuit

against the County. (Doc. 9, ¶¶ 17, 18). Her claims against the County were ultimately settled. (Doc. 9, ¶¶ 17, 18).

Between 2013 to 2016, Rhodes was not employed by the County. (Doc. 9, ¶ 14). However, in 2016, the County's Probation Department President, Judge Charles Saylor ("Judge Saylor"), sought to rehire Rhodes. (Doc. 9, ¶¶ 14-16). At this time, Judge Saylor sought to recruit "the most qualified candidates" to aid in restructuring the Probation Department. (Doc. 9, ¶ 16). Rhodes was subsequently rehired by the County. (Doc. 9, ¶ 17). By this time, Rhodes had nearly two decades of experience working in criminal investigations, probation, and other aspects of criminal justice administration. (Doc. 9, ¶ 20).

Upon being rehired, Rhodes was supervised by Deputy Chief Brian Updegrove ("Chief Updegrove"), Adult Probation Chief Tim Heitzman ("Chief Heitzman"), Court Administrator Kevin O'Hearn ("O'Hearn"), Judge Saylor, and in some capacity, Megan Kriner ("Kriner"). (Doc. 9, ¶ 22). Upon learning that Rhodes was rehired, Kriner, Chief Updegrove, and Chief Heitzman expressed hostility and threatened to quit their jobs. (Doc. 9, ¶ 24). According to Rhodes, this is likely due to these figures' involvement in Rhodes's 2013 discrimination and retaliation lawsuit. (Doc. 9, ¶¶ 24, 25).

During her second employment with the County, Rhodes experienced blatant abuse and discrimination by her co-workers and supervisors. (Doc. 9, ¶ 31). Chief Updegrove and Chief Heitzman frequently threatened to "deport" Rhodes, condoned misogynistic jokes against her, excluded Rhodes from professional development opportunities, barred her from performing her Spanish-speaking job functions, publicly berated her, publicly threatened her, and ignored any and all issues raised by Rhodes related to her treatment while working for the County. (Doc. 9, ¶ 33). As Rhodes puts it in her amended complaint:

> She was nitpicked at times, ignored, and management and human resources who were aware Plaintiff was working in a difficult environment just let it happen, did nothing to mitigate the environment, and never meaningfully intervened. In fact, on many instances in which Plaintiff sought meetings, her requests were ignored, or Defendant's management did not ultimately attend an anticipated meeting.

(Doc. 9, ¶ 31).

One more specific instance of abuse occurred in December 2020. (Doc. 9, ¶ 28). At a luncheon, County employees gave Rhodes a Christmas card with a fabricated residency card, or Green Card, listing her birthplace as Mexico. (Doc. 9, ¶ 28). The fabricated Green Card had a picture of Rhodes on it with "googly eyes" overlaying her own. (Doc. 9, ¶ 29). Rhodes reported the card to Chief Updegrove and Chief Heitzman, but they refused to take action. (Doc. 9, ¶ 30). According to them, because Judge Saylor had been present at the luncheon it was not their problem to deal with. (Doc. 9, ¶ 30).

After enduring almost six years of "discriminatory, harassing, and retaliatory conduct" while employed by the County, Rhodes became "determined that she needed to get redress and have her environment corrected or she was going to institute legal again against [the County]." (Doc. 9, ¶ 34). Accordingly, Rhodes made several complaints to numerous levels of County management, including Chief Updegrove, Chief Heitzman, O'Hearn, and Judge Saylor. (Doc. 9, ¶¶ 36, 37, 38). Rhodes specifically complained about how she was treated for previously pursuing legal action against the County, about how women and minorities were treated in the workplace, and how she believed she was underpaid based on her ethnicity, especially when compared to her peers. (Doc. 9, ¶¶ 36, 37, 38). On February 15, 2022, providing no rationale, Chief Heitzman terminated Rhodes. (Doc. 9, ¶¶ 40-42). Rhodes

3

alleges her termination violated the Northumberland County Adult Probation and Parole Standards and Procedure, which dictates:

> [Probation staff] will not be demoted, suspended, discharged or have any disciplinary action taken against them without just and sufficient cause. Included within the concept of just cause is the principle that disciplinary action shall be corrective and progressive in nature and that employees should be apprised by conduct requirements of violation for which they may be discipline . . . such appraisal may be by various means, *including individual counseling, individual oral or written notice* or warning or more general means such as this manual or specific policy statements.

(Doc. 9, ¶ 45) (emphasis added).

On March 1, 2022, a few weeks after her termination, Rhodes received the following letter signed by Chief Heitzman:

> This letter is official notice to inform you that your employment as an Adult Probation Supervisor is terminated as of February 15, 2022 as indicated in our meeting dated February 15th, 2022. Your employment was terminated for the following reasons:
>
> After investigation following a discrimination complaint from an incident occurring on 2-11-22, it was determined that [Rhodes] did violate the Unified Judicial System Code of Conduct. Violation of the Unified Judicial System Code of Conduct . . . shall treat all persons respectfully and impartially . . . In that on or about 2-11-22 in the Probation Office in Sunbury PA, [Plaintiff], without justification and in violation of department practice, aggressively questioned an individual on a low-level DUI case, who has had no violations, about his gang affiliations and his gang tattoos . . .

(Doc. 9, ¶ 47).

Rhodes alleges her termination was completely pretextual. (Doc. 9, ¶ 49). Prior to her termination, Rhodes had never been disciplined and was not provided any formal warning about her job performance. (Doc. 9, ¶ 49). As Rhodes sees it, "it was actually part of [Rhode's] job and training to inquire about gang affiliations and gang tattoos evaluating probation issues regardless of level of crime(s)." (Doc. 9, ¶ 49). Further, according to Rhodes, people on

probation complained about their probation officers all the time without being terminated by the County. (Doc. 9, ¶ 49). In fact, many individuals similarly situated to Rhodes had not been terminated for much graver offenses.[1] (Doc. 9, ¶ 50).

On October 31, 2023, Rhodes filed the instant lawsuit against the County. (Doc. 1). Rhodes filed the operative amended complaint on January 3, 2024. (Doc. 9). On January 19, 2024, the County filed the instant motion to dismiss. (Doc. 11). On January 22, 2024, the County filed a brief in support of their motion. (Doc. 13). Rhodes filed a brief in opposition on February 2, 2024. (Doc. 14). Accordingly, the motion is ripe for discussion. (Doc. 11; Doc. 13; Doc. 14).

**II.   LEGAL STANDARDS**

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

---

[1] Rhodes provides six examples of individuals and their offenses, none of which resulted in termination, ranging from leaving a loaded gun on their desk for several days to altering court orders without permission. (Doc. 9, ¶ 50).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).

The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

#### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The parties dispute whether Rhodes has exhausted her administrative remedies prior to bringing this action. (Doc. 13, at 3; Doc. 14, at 6). The County argues that Rhodes's hostile work environment and retaliation claims must be dismissed because she failed to exhaust her administrative remedies, as evidenced by the Charge of Discrimination ("the Charge") submitted by Rhodes and attached to the County's motion as Exhibit A.[2] (Doc. 11-1; Doc. 13, at 3). Rhodes argues that she has exhausted her administrative remedies because the Charge "expressly raised claims of retaliation," and because "her hostile work environment claim is fairly within the scope of the claims raised in her Charge and the investigation arising therefrom." (Doc. 14, at 7). Upon the Court's review of the Charge, the Court agrees with Rhodes.

"Prior to seeking judicial relief under the PHRA, [ ] or Title VII, a plaintiff must exhaust all administrative remedies." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019); *see also Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997). "The test for exhaustion is 'whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom.'" *Kopko*,

---

[2] The parties do not dispute the authenticity of the Charge attached by the County to their motion to dismiss, thus the Court may consider it here as an indisputably authentic document. *See PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a district court may examine an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

776 F. App'x at 773 (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)). Thus, to determine whether a plaintiff has exhausted their administrative remedies, the Court must determine that the plaintiff's claims are "reasonably related to those in the administrative charge," by deciding whether there is a "close nexus between the facts" in the administrative charge and those in the judicial complaint. *Kopko*, 776 F. App'x at 773; *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978).

Here, there is a close factual nexus between the allegations detailed in the Charge and those detailed in Rhodes' amended complaint. (Doc. 9; Doc. 11-1). First, there is a close factual nexus between the averments in the Charge and Rhodes' retaliation claim. (Doc. 9; Doc. 11-1). In the "Protected Class(es)" section of the Charge, enumerated as section number 5 ("Section 5"), the Charge reflects that Rhodes checked the box to indicate she was filing the Charge in connection to a retaliation claim. (Doc. 11-1, at 5). Additionally, in the section titled "7B. Discriminatory Discharge due to Retaliation," Rhodes alleges facts supporting her retaliation claim and even specifically includes that the County's actions were "retaliatory because approximately two months after I complained about discrimination, [the County] discharged me." (Doc. 11-1, at 8). Thus, Rhodes's retaliation claim is clearly within the scope of the Charge. (Doc. 11-1, at 5). Accordingly, Rhodes has exhausted her administrative remedies as to her retaliation claim.

Next, Rhodes's hostile work environment claim is reasonably related to the allegations in the Charge, as therein she directly states that she was subjected to a hostile work environment. (Doc. 11-1, at 6). In two separate sections of the Charge, Rhodes includes the following allegation: "On December 15, 2021, I reported to Judge Saylor that *[the County] created a hostile work environment for women*, women were treated unfairly, and that I was not

8

paid equally to Molly McCarthy, non-Hispanic Probation and Parole Supervisor." (Doc. 11-1, at 6, 8) (emphasis added). Including this averment in the Charge is sufficient for Rhodes to have exhausted her administrative remedies as to her hostile work environment claim. *See Weems v. Kehe Food Distributors, Inc.*, 804 F. Supp. 2d 339, 342 (E.D. Pa. 2011) (finding including claims of discrimination in an administrative charge to be sufficient for plaintiff to have exhausted their administrative remedies as to a hostile work environment claim because the claim could "reasonably be expected to grow out of the charge of discrimination."); *see also Anjelino v. New York Times Co.*, 200 F.3d 73, 94–95 (3d Cir. 1999) (holding a hostile work environment claim was within the scope of an initial EEOC charge because it alleged the plaintiff was subjected to an "abusive atmosphere"); *cf. Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (finding a plaintiff failed to exhaust administrative remedies as to her hostile work environment claim because there was no "analogous language in the Charge from which "could give rise to a hostile work environment claim."). The County has not cited any caselaw to the contrary.

Because this Court finds Rhodes has exhausted her administrative remedies as to both her retaliation and hostile work environment claims, the County's motion to dismiss is **DENIED** on this basis. (Doc. 11).

    B.  S<small>UBSTANTIVE</small> T<small>ITLE</small> VII & PHRA C<small>LAIMS</small>

The parties dispute the sufficiency of Rhodes's discrimination and retaliation claims under the Title VII and PHRA, Count II and Count III respectively. (Doc. 13, at 4, 7; Doc. 14, at 7). According to the County, Rhodes "has not pled sufficient facts that her termination was taken under circumstances that give rise to an inference of unlawful discrimination." (Doc. 13, at 6). The County further argues that Rhodes's complaint "fails to allege facts

sufficient to establish that her 'comparators,' or similarly situated employees who were not in her protected class, were treated more favorably."[3] (Doc. 13, at 6). Rhodes maintains that under both Title VII and the PHRA, she has alleged plausible claims of race and gender discrimination. (Doc. 14, at 11). As Rhodes sees it, the County's argument for dismissal is premised on "the Court *not* accepting the truth of Plaintiff's allegations and considering self-serving evidence outside of the pleadings." (Doc. 14, at 11). At this early stage of the litigation, the Court agrees with Rhodes.

Discrimination claims brought under Title VII and the PHRA are analyzed under the same standard. See *Verma v. Univ. of Pennsylvania*, No. 11-611, 2012 WL 1835727, at *7 (E.D. Pa. May 18, 2012); *see also Brennan v. Century Sec. Servs.*, No. 3:21-CV-01678, 2023 WL 2504760, at *8 (M.D. Pa. Mar. 14, 2023). To sufficiently allege a claim of unlawful discrimination under both statutes, a plaintiff must demonstrate (1) that they are a member of a protected class; (2) that they are qualified for the position they are employed to do; (3) they suffered an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. See *Lynch v. Tasty Baking Co.*, No. CV 23–4445, 2024 WL 2848295, at *2 (E.D. Pa. June 5, 2024) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). Here, Rhodes satisfies the first element of her Title VII and PHRA claims by alleging she is a Hispanic female. (Doc. 9, ¶ 13); *see Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 835 (3d Cir. 2016) (recognizing a Hispanic female to be a part of a protected class). She satisfies the second element of her claims by alleging she performed "extremely

---

[3] In making this argument, the County relies on case law detailing the evidentiary burden a plaintiff has "to demonstrate that the comparator was sufficiently similar in all relevant respects to defeat a motion for *summary judgment*." (Doc. 13, at 6) (emphasis added); *see Warfield v. SEPTA,* 460 F. App'x 127 (3d Cir. 2012).

well," at her job and by alleging she was rehired after her supervisor, Judge Saylor, wanted to employ the "most qualified employees." (Doc. 9, ¶¶ 14, 16). Next, Rhodes has satisfied element three of her claim by alleging she was terminated. (Doc. 9, ¶ 21); *see Lynch*, 2024 WL 2848295, at *2. "An 'adverse employment action' under Title VII is an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 712 (E.D. Pa. 2010) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Courts have consistently held that termination qualifies as an adverse action for the purposes of Title VII and the PHRA. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (recognizing termination to be an adverse action for the purposes of Title VII and the PHRA); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (recognizing termination of employment as an adverse action). Thus, at issue here is only element four; whether Rhodes was terminated under circumstances that give rise to an inference discrimination. *See Lynch*, 2024 WL 2848295, at *2. Rhodes argues she has sufficiently alleged such circumstances because her amended complaint includes detailed factual allegations of discriminatory conduct performed regularly by County employees over the course of the relevant six-year period. (Doc. 14, at 13). These allegations include, but are not limited to, those detailing deportation threats from supervisors, Rhodes being paid less than similarly situated white peers, Rhodes being terminated without explanation and/or warning whereas her peers who perpetuated "much graver offenses" (some of which warranting "immediate termination") were not terminated, the County condoning sexist and racist jokes, Rhodes being excluded from performing the Spanish-speaking duties she was hired to perform, and specific instances of bullying based on race. (Doc. 9, ¶¶ 33, 34, 36, 50, 60, 61). Rhodes also

11

alleges she complained about the discrimination she suffered while working at the County to multiple supervisors, many of whom are alleged to have participated in the abuse, to no avail. (Doc. 9, ¶¶ 33, 34, 36, 38). Lastly, Rhodes alleges a close proximity between the bulk of her complaints and the date of her termination. (Doc. 9, ¶¶ 36-38, 40).

To determine whether a plaintiff has pled facts that establish an inference of unlawful discrimination, courts look to whether "the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003) (quoting *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352–353 (3d Cir. 1999)). While a plaintiff need not "compare herself to a similarly-situated individual from outside her protected class to raise an inference of unlawful discrimination," she must somehow connect the adverse action suffered to her protected class. *Artz*, 720 F. Supp. 2d at 713. Here, Rhodes's allegations support the conclusion that her termination occurred under circumstances that give rise to an inference of discrimination, as she has established a link between her race and gender and the abuse she suffered to her termination and has pled facts that suggest she was treated differently than similarly situated individuals outside her protected classes. (Doc. 9, ¶ 36-40, 50-52, 60-64); *see Bhatti v. Republican Caucus of Pennsylvania House of Representatives*, No. 18-CV-2178, 2020 WL 3412661, at *4 (M.D. Pa. June 22, 2020) (looking to the history surrounding a plaintiff-employee's termination as well as alleged "overt acts of discrimination" to determine plaintiff-employee had pled sufficiently facts giving rise to an inference of discrimination); *see also Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 527-28 (E.D. Pa. 2014) ("Showing that similarly situated non-members of the protected class were treated less favorably is one of a variety of

methods to create an inference of discrimination"). Accordingly, the County's motion to dismiss Count II and Count III of Rhodes's amended complaint is **DENIED**. (Doc. 11).

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **DENIED**. (Doc. 11). An appropriate Order follows.

Dated: July 1, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**